## WASHINGTON & O. D. RY. CO. v. SMITH.

(Court of Appeals of District of Columbia. Submitted October 17, 1922. De-
cided May 7, 1923.)

No. 3781.

1. **Carriers ☞315(4)—Declaration alleges negligence of conductor in operating
brake does not authorize recovery for injuries caused solely by defective
brake.**

A declaration alleging that defendant was a carrier of passengers,
and so grossly and negligently managed and operated a brake on the
car in which plaintiff was a passenger that the brake was released, and
the handle flew back and struck plaintiff, does not authorize recovery
for injuries caused solely by defective appliances.

2. **Carriers ☞317(5)—Evidence of defective brake held admissible to show
care required of conductor.**

Even though a declaration of a street car passenger did not author-
ize recovery for injuries caused by defective appliances, evidence that
the brake was defective, so as to require greater care in properly setting
it to avoid its being accidentally released, was admissible on the issue
of whether the conductor was negligent in setting the brake because of
the greater care imposed on him by his knowledge of its condition.

3. **Carriers ☞321(8)—Evidence held to authorize instruction as to negligence
of conductor in setting brake.**

Evidence that the brake on a street car was defective, so that it
might be accidentally released if the dog were not kicked clear into
the ratchet, authorized an instruction reciting the evidence and stating
that, if the jury found that the dog disengaged itself from the ratchet,
they might find it was not kicked in far enough to hold the brake.

4. **Damages ☞158(4)—Declaration alleging nervous shock and consequent sick-
ness authorizes evidence of asthma caused by nervousness.**

A declaration alleging that by the injury the nervous system of
plaintiff was shocked and impaired, and she became sick, is sufficient
to authorize evidence that she suffered from asthma, which was a nervous
disease that could have been caused by the injury.

5. **Witnesses ☞288(2)—Can be examined on redirect as to disease brought out
on cross examination.**

Where the declaration did not allege asthma was produced by the
injury, but testimony as to the asthmatic condition of plaintiff was
brought out on cross-examination of her, it became a legitimate subject
for redirect examination, to show that asthma was caused by nervous-
ness and might have resulted from the injury.

6. **Appeal and error ☞1048(6) Witnesses ☞328—Permitting questions to test
memory and credibility of witnesses rests in court's discretion.**

Permitting the asking of questions on cross-examination, which were
not material or relevant to any of the issues in the case, on the theory
that they tested the memory and to some extent the credibility of the
witness, is a matter largely in the discretion of the trial court, and
appellate tribunals will not interfere with the exercise of that discretion,
unless it is clear that injuries to appellant resulted therefrom.

7. **Witnesses ☞388(3)—Cannot be impeached by inconsistent statements, unless
foundation has been laid.**

Plaintiff's testimony cannot be impeached by proving contradictory
statements made by her, unless a proper foundation for such impeach-
ment was laid when she was on the stand.

8. **Witnesses ☞390—Contradictory statements of party cannot be brought out
on cross-examination of her witness.**

Plaintiff's testimony as to her physical condition cannot be impeached
by cross-examining her physician, who testified as her witness as to

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

contradictory statements made by her, unless the witness was accepted for that purpose as a witness for defendant.

**9. Witnesses ⚖➟275(1)—Exclusion of cross-question held not abuse of discretion.**

In action for injuries to a street car passenger, the exclusion of a question asked plaintiff on cross-examination as to the address she gave to defendant's conductor, which was not material to any of the issues or pertinent to any matter brought out on direct examination, was not an abuse of discretion.

**10. Trial ⚖➟133(6)—Misconduct of plaintiff's counsel In argument held not to require reversal, in view of court's instruction.**

Misconduct of plaintiff's counsel in referring to the death of plaintiff's husband and son during the period between her injury and the trial, and in repeating such references in a controversy with the court in the jury's presence, after objection was sustained thereto, was not so prejudicial to defendant as to require discharge of the jury or reversal of the case, where the court, in addition to sustaining the objection, told the jury at the time to disregard the statement, and again in the instructions charged the jury not to consider the statements not supported by evidence.

Appeal from the Supreme Court of the District of Columbia.

Action by Lillie M. Smith against the Washington & Old Dominion Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

W. J. Lambert and R. H. Yeatman, both of Washington, D. C., for appellant.

Crandal Mackey, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. This is an appeal by the Washington & Old Dominion Railway Company from a judgment entered against it in favor of Lillie M. Smith for the sum of $2,500.

The declaration alleges that the defendant company is engaged in the business of carrying passengers between Rosslyn, Va., and Washington, D. C.; that the company, disregarding its duty as a carrier of passengers, so grossly and negligently managed, operated, and controlled a brake on the car in which the plaintiff was a passenger that the brake was released and the handle thereof flew back and struck the plaintiff on the side, back, and spine with great force and violence, thereby causing to her a nervous shock, permanent physical injuries, and great pain and suffering, to her damage in the sum of $20,000.

Defendant pleaded not guilty to the declaration, and, the case having gone to trial, a verdict was rendered against the defendant for $2,500, whereupon the judgment was entered from which this appeal was taken.

The evidence submitted by the plaintiff was to the effect that the plaintiff boarded a car of the defendant, which carried her from the south side of the Aqueduct Bridge to the terminal of the defendant at Thirty-Sixth and M streets, in the city of Washington; that on arriving at the terminal the plaintiff attempted to leave the car, and that, just as she was about to step off the rear or south platform, the

⚖➟For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

hand brake there placed was released in some way, and in consequence the handle of the brake whirled about and struck her with such violence on the back as to knock her down and produce the injuries declared.

The evidence was undisputed that, to hand-brake the car, a handle or lever fastened to an upright metal post had to be turned in such a way as to drive the shoes or brake blocks against the wheels. To prevent the unwinding of the brake and the withdrawal of the shoes from the wheels, a dog or key, bolted to the floor, had to be driven into a toothed wheel or ratchet, attached to the brake post at the level of the floor. So long as the dog was engaged by the teeth of the ratchet, the shoes or blocks would remain in contact with the wheels and lock them. If, however, the dog or key was set free of the ratchet, the brake handle or lever, unless held fast by the hand, would fly back in the reverse direction of the winding applied to hold the shoes or brake blocks against the wheels.

It further appears from the uncontradicted testimony that on the arrival at the terminal of the car carrying the plaintiff the conductor applied the brake on the rear or south platform, and then kicked the dog into the ratchet to hold the car fast.

Testimony on behalf of the plaintiff was offered and received tending to show that the notches of the dog were worn, and that, unless it was kicked into the ratchet far enough, it was likely to slip out and permit the brake to unwind. The defendant objected to that testimony on the ground that the declaration did not attribute the injuries to defective appliances. The objection was overruled and an exception taken.

On cross-examination Dr. Swain, a witness for plaintiff, testified that he treated the plaintiff for asthma in 1914. On redirect examination he stated that asthma was a nervous affliction, and that the blow of which plaintiff complained would cause nervousness. Dr. Swain was asked the following questions and made the following answers, subject to the objection and exception of counsel for the defendant:

"Q. Now, then, what effect has the nervous condition on asthma, as the cause of asthma? A. Asthma is caused by nervousness.  *  *  *

"Q. First, Doctor, you testified that this was a nervous condition this injury caused nervousness; later that you found asthma; that asthma is a nervous disease. Now, then, I ask the question whether that history, from that history, you would attribute the asthma to the blow? A. I should say it did."

During the cross-examination of the plaintiff, she was asked the following question:

"Q. Is it not a fact that you were asked your address by an agent of the railway, by Mr. Norvell, and that you gave your address as Clarendon, Va?"

To this question counsel for the plaintiff objected, on the ground that Mr. Norvell's report gave her address as Ballston, Va., and that the report went by consent. The objection was sustained, to which ruling the defendant excepted.

B. W. Norvell, the conductor of the car on which the accident occurred, testified on behalf of the defendant that he set the hand brake on the rear of the car and then leaned out of the window to pull down the trolley, when he heard the release of the hand brake and saw that the handle had struck the plaintiff; that plaintiff got off the car and stated to him that she was not seriously hurt; that she gave her address as Clarendon, Va., and that he made a report of it to the company; that he kicked the dog well into the ratchet; that, if the dog was struck by the foot of a passenger leaving the car, the dog would be released from the ratchet; that the dog and ratchet were in plain view of persons leaving the car. On cross-examination this witness said that an experienced conductor, after kicking the dog into place, "sees that it stays there." He also said that, when the hand brake is tight and there is much pressure against it, it holds better than if the hand brake is just turned. On redirect examination he stated that *he did not have the hand brake on in full force,* but that he had it a little over half way, which should have held it perfectly.

Benjamin A. Chaney testified for the defendant that he was familiar with the car on which plaintiff was injured, and that, when the brake was wound moderately tight and the dog put in, the brake would hold, but, if the dog was not put in sufficient to hold it, the dog would slip right out, and the brake would unwind immediately.

George G. Bostwick testified for the defendant that he was familiar with the car on which the accident occurred, and that, if the brake was tight and the dog put in, the brake would hold; that the speed with which the brake would unwind depended upon how tight the brake was wound; that if the brake was wound up tight it would unwind "right quick." On cross-examination he said that the dog was put into the ratchet by kicking it with the foot, and that, if the dog was not kicked "clean in," it might not hold.

The court having passed upon the instructions requested, counsel proceeded to argue the case and during the course of the closing argument counsel for plaintiff made the following statement to the jury:

"This lady stands before you with the same stamp of character, of honesty and truthfulness, as your own mother, your own wife or daughter or sister, * * * and she is going to get from you the same consideration, * * * when you think what she went through with in waiting these five slow, dreary, dragging years to get her case tried under the laws of her country, these years in which her husband had died."

To that line of argument counsel for the company at this point objected, and the court ruled that the delay in the case must not be referred to. Plaintiff's attorney, apparently for the purpose of securing a change of ruling, made three several attempts to address the court about the delay, although warned not to discuss that matter. He then said:

"I am not going to say that this delay had anything to do with the case, but I am going to say that during this delay she did not get medical treatment because her husband had died, * * * and her son had died."

The court sustained an objection to that statement as highly improper and instructed the jury to disregard it. To that ruling counsel

took an exception upon the ground that the death of the husband, and the absence of the son left plaintiff without means and explained her failure to secure prompt medical attention.

Defendant then moved the court to withdraw a juror and to dismiss the case. The motion was denied, and, after exception taken, the court again charged the jury as follows:

"Gentlemen of the jury: I charge you that you should disregard the remarks that Mr. Mackey has made, * * * and that you should give no weight or consideration to them because they have no place in the case at all."

After the case had been argued by both parties, the court once more instructed the jury to confine its deliberations to the evidence submitted by the parties and to disregard remarks of counsel addressed to the court and to each other.

The defendant claims that the court erred (a) in admitting testimony tending to show that the dog of the hand brake was worn, and that the hand brake would occasionally unwind of itself thereby causing the handle to fly back; (b) in instructing the jury as follows:

"There is no evidence in this case in regard to the negligence except this: It is testified that, if the dog were kicked far enough into the ratchet, it would hold. It was also testified that, if the dog were not kicked far enough into the ratchet, it would not hold. If you are satisfied from the evidence in the case that the dog disengaged itself from the ratchet, and the handle of the brake flew around and hit the plaintiff in the back, you are warranted in finding from the evidence in the case that it was not kicked in far enough to hold the brake. You are warranted, but not obliged; but it is for you to say whether it was kicked in far enough."

[1-3] It is true that the declaration did not charge the accident to defective appliances, and did specifically allege that the plaintiff was injured, because the conductor and servant of the defendant carelessly and negligently caused and permitted the brake on the car to become unwound and to fly back. It is true that on that declaration plaintiff could not recover for injuries caused solely by defective appliances. Indeed, the court in positive terms so instructed the jury. It is equally true, however, that a recovery could be had under the declaration for the neglect of the conductor in permitting the brake to unwind by reason of careless manipulation and that the degree of care which he was bound to use was an element in the case which plaintiff had a right to prove, and the jury had a right to consider. The conductor knew the condition of the rear brake or was at all events charged with that knowledge. He was consequently in duty bound to use more care in winding up the brake and in kicking the worn dog into the ratchet than would have been required of him if the brake was in perfect condition. From that it follows that, while the testimony was evidence of a defective appliance, it was also evidence that in braking the car such an appliance demanded extra care and caution on the part of the conductor. The testimony was therefore admissible, and was entitled to consideration by the jury in reaching a conclusion as to whether or not the conductor was negligent. As the testimony tended to show that the brake released itself because the dog slipped out of the ratchet, the court did not err in giving the instruction to which exception was taken.

[4, 5] The testimony of Dr. Swain that a nervous condition would cause asthma and that the plaintiff had asthma was in our opinion properly admitted notwithstanding the fact that the ad damnum clause of the declaration did not allege that asthma was a physical condition resulting from the accident. It was alleged that the nervous system of the plaintiff was shocked and impaired, and that by reason of the blow of the brake she became sick, sore, lame, and disordered. Testimony to the effect that asthma was a nervous condition was some evidence that her nervous system had been shocked and impaired, and was certainly evidence that she was sick. And besides all that the asthmatic condition of plaintiff was originally brought out on cross-examination and thereby became a legitimate subject for redirect examination.

The exceptions taken to the refusal of defendant's prayer No. 1 and to the granting of plaintiff's prayers Nos. 2 and 3 were not discussed on the oral argument of the appeal, and are merely referred to, but not commented on, in the briefs. We find nothing in the instructions which would warrant us in holding that the court erred in making the rulings concerning them to which exception was taken.

On cross-examination of Dr. Sutton, a witness for the plaintiff, he was asked the following questions:

"Q. When you attended her [the plaintiff] did she give any history of the condition in which she claimed to be in, how she felt, or what she was suffering from?"

"Q. Was that or not the first knowledge you ever had of this suit or this accident? (referring to a conversation had with Mr. Mackey four weeks before the trial)."

Plaintiff's objection to both questions was sustained, and, exception having been taken, defendant offered to prove that Mr. Mackey approached Dr. Sutton four weeks before the trial, and then for the first time told the Doctor about Mrs. Smith's suit against the Washington & Old Dominion Railway Company, and that that was the first knowledge that Dr. Sutton had that there was such an accident, or that there was any claim of accident or injury to her.

[6] So far as the record discloses, the questions were pertinent to nothing brought out on direct examination. They were not material or relevant to any of the issues in the case, and were admissible on cross-examination only on the theory that they tested the memory, and therefore to some extent the credibility, of the witness. Whether questions of that kind shall or shall not be answered is a matter largely in the discretion of the trial court, and appellate tribunals will not interfere with the exercise of that discretion, unless it is clear that injury to the appellant resulted therefrom.

[7, 8] If it was the purpose of counsel for the defendant to impeach plaintiff's testimony as to her condition, or as to matters not collateral to the issue, by proving contradictory statements made by her to her physician or others, fairness to her demanded that a proper foundation for such impeachment should be laid when she was on the stand. Counsel did not pursue that course. Moreover, if contradictory statements pertinent to the issue were made by plaintiff, proof

of that fact could only be submitted as part of defendant's case, and not by way of cross-examination of plaintiff's witnesses, unless such witnesses were accepted for the purpose as witnesses for the company. The questions propounded to Dr. Sutton, to which plaintiff objected, were therefore properly excluded. 1 Greenleaf on Evidence (16th Ed.) §. 447, p. 573, section 461f, p. 590, section 462, p. 591, and section 445, pp. 571 and 572.

[9] The question propounded to the plaintiff on cross-examination:

"Is it not a fact that you were asked your address by our agent of the railway, by Mr. Norvell, and that you gave your address as Clarendon, Va.?"

—was not material to any of the issues raised, or pertinent to any matter brought out on direct examination, and we cannot say that its exclusion was an abuse of discretion. Greenleaf on Evidence, § 445, p. 571.

[10] The appellant assigns as error the refusal of the court to withdraw a juror and to discharge the jury for the persistence of counsel for plaintiff in making statements to the jury not supported by the evidence. The court ruled that plaintiff's counsel should not refer in his closing argument to the delays in the case, to the death of plaintiff's husband, or to the death of her son while fighting in Europe. That ruling was evidently founded on the sound principle that the argument of a case should be based on the evidence admitted, and should be addressed rather to the reason than to the emotions or passions of jurors.

We are not convinced by the record, however, that counsel was acting in bad faith, or that he was deliberately endeavoring to bias or prejudice the jury. After the court forbade the line of argument which he was pursuing, he should not have repeated in the presence of the jury statements to which objection was made and sustained; but as the reiterated statements were apparently addressed to the court, to secure a reversal of the ruling against him, we have some doubt as to whether his persistence was actuated by an ulterior purpose. He was interrupted before finishing his statement, and he may have really intended to argue that plaintiff's failure to secure prompt medical treatment was due to lack of means, because of the death of her husband and son, and not to the fact that she was not injured.

Under the circumstances, and as the court immediately instructed the jury to disregard the remarks objected to, and to give them no weight or consideration, we do not feel that we would be justified.in reversing the judgment for misconduct of counsel.

The judgment appealed from is affirmed, with costs.

Affirmed.